1-1076 Minnesota, Deborah Swarthout v. Kilolo Kijakazi, Acting Commissioner of Social Security. Good morning, Your Honors. May it please the Court, Dana Duncan on behalf of Deborah Swarthout. Mr. Duncan, we'll hear from you first. You may proceed. All right, thank you. May it please the Court, Dana Duncan on behalf of Deborah Swarthout. This is a singular issue. It's primarily framed around the issue of the treating physician rule. However, we don't even need to get to that point yet because what we're really talking about in this case is the fact it's an articulation issue. If it's just a matter of whether the judge weighed this evidence or that evidence, I lose. This case really comes down to whether the judge's opinion regarding the specifics of Dr. Mariel Kozhanin's opinion is sufficient to support. Whether you call it tracing the path of reasoning, building a logical bridge, the problem in this case is that the judge's decision is really, when you read it and just focus on the decision itself, is a non sequitur. The judge makes numerous findings throughout the entire decision and then comes to a conclusion based upon stuff that has absolutely nothing to do with fibromyalgia. In this case, he noted that there's a diagnosis of fibromyalgia and chronic fatigue syndrome. He did not find that her condition of photosensitivity was a severe impairment, despite the fact that he finds in multiple places at least three doctors diagnosed it as well. Regardless of that, his ultimate conclusion is that he gives this opinion, Dr. Kozhanin's opinion, no weight or little weight because Ms. Wardoff had full strength, normal reflexes, intact coordination, normal joints, normal extremity movements, and a normal steady gait with consistent independent ambulation. The problem is that if indeed this is the case and this stuff is relevant, which according to all medical literature it is not, for the purpose of establishing fibromyalgia or chronic fatigue syndrome, the ultimate conclusion, let's just focus on one aspect. The commissioner has established a policy statement, a social security rule in 12.2P. In 12.2P, the commissioner notes that the ALJ should consider issues of fatigue, inability to sustain full-time work, and subjective complaints of pain once the tender points are outlined. Nowhere in that determination does it talk about reflexes, coordination, gait, strength, ambulation. If indeed this were the case, if this stuff was really supposed to be factors for the ALJ to consider, the commissioner would have put it in the ruling, and it's not. So it's either one or the other. Either the ALJ is making findings that are not consistent with policy, or the commissioner has missed stuff when they created this ruling. Either way, social security rulings, while not having the same weight as law, are binding on the commissioner. Yet we have findings that have nothing to do with anything. What do you think is relevant then? Those things are not relevant. If those things the judge listed are not relevant, what do you think the judge should be looking at? The judge's responsibility in this is to overall assess things. In the ruling itself, it indicates the judge should be looking at consistency overall, which includes reports of pain, treatment provided, the longitudinal record. In this case, he outlines that record. He notes that she's seen four or five different physicians who all prescribed pain medication, treatment, gabapentin, Lyrica for her pain. All looked at her and suggested different things. A couple of the doctors released her because they said there was nothing more they could do for her. All of this stuff factors in when you're assessing the ability to do subjective complaints and the reliance of a treating physician on those subjective complaints of pain. None of that stuff was outlined. If you could just look briefly at the decision itself, the absolute decision itself. The judge noted in March of 2015, Dr. Vaughn. Dr. Vaughn noted that she had fatigue with a history of recurrent episodes of low varied fever and chills, Renaud's disease, recurrent headaches, photophobia, and outlined him. He continued to treat her. He noted those again in the next paragraph the judge outlines March through November of 2015. Noting again the same problems. Chronic fatigue, fibromyalgia, suspected cognitive impairment. He then goes on and notes in the next paragraph July 8, 2015. He noted that Ms. Ward out went through an evaluation with Dr. Sanjeev Nanda at Mayo Clinic and the fibromyalgia chronic fatigue clinic. He noted widespread pain. He diagnosed fibromyalgia. He noted he prescribed medication. The next paragraph the judge notes July 17, 2017. She would have an evaluation with neurologist Angela Waters Robinson. Again, it's reported chronic fatigue syndrome, depression, anxiety, light sensitive. December 1, 2017. Treatment with Dr. Kanjian and noted the same problems. Light sensitive, diagnosed chest pains, atypical in nature, fibromyalgia, and indicated that there were problems associated with fatigue. So we have multiple doctors. The judge is on admission indicating that there's a problem with fatigue. Yet the judge puts her at light. We have a 56-year-old woman who has passed work as a nurse. A significantly skilled position with a specific vocational preparation of 7. Medium and exertion. She performed it at light. If she's limited to just going from light to sedentary work, she qualifies under Rule 202.06 of the Medical Vocational Guidelines in 20 CFR Part 404 Subpart P Appendix 1. So if she also was limited to semi-skilled work, she would qualify for benefits. We have a treating source who says that her pain is severe enough that she has cognitive loss and interference with her ability to concentrate. And quite frankly, I don't know about your honors, but I don't want a nurse caring for me if she has pain severe enough to not be able to focus on what she's doing when she's handing out medication, which is in her testimony. One of the things she noted why she quit nursing was because she was worried about giving out wrong medication to patients and causing danger to them. And yet we have all of this evidence and it all comes down ultimately to the issue of reflexes, strength, intact coordination, normal joints, steady gait. Excuse me. Counsel, are you saying those factors aren't relevant or are you saying they're relevant but there are additional factors that in a chronic fatigue or fibromyalgia case must be considered? Well, I think you can consider these to some extent, but I find it interesting that not one of these is mentioned in the fibromyalgia ruling. If the commissioner was saying you should be looking at joints and movement and such, he would have stated that. It would have been in the ruling itself and it's not. There's no mention of any of this. And not to mention the fact that the judge basically found, as a severe incur, chronic fatigue syndrome. And yet, despite the chronic fatigue syndrome, found that there was nothing specific associated with that. So, I guess on that note, I only have a minute left and I'll reserve that for rebuttal. Thank you. All right. Very well. Thank you for your argument. Mr. Sides, we'll hear from you. May it please the court, my name is James Sides and I represent the acting commissioner of the Social Security Administration, Keila Lowe Kichikaze. This is not a case involving whether there is a diagnosis of fibromyalgia. The ALJ found that fibromyalgia was a medically determinable impairment and found that it was a severe impairment. So, this is not an issue where you must go to SSR 12-2P and look at the diagnostic criteria of fibromyalgia to determine whether fibromyalgia exists because that's settled. The ALJ found it is supported and it's a severe impairment. What the ALJ did, just like this court did in Grindley, is determine that fibromyalgia by itself does not have to be a disabling impairment. Whenever there is fibromyalgia involved, SSR 12-2P dictates the diagnostic criteria. That's already settled. But it also requires that the ALJ consider the objective medical evidence to determine whether the objective medical evidence alone will support the finding of disability. And that's what the ALJ... Mr. Sides, don't you also have to...isn't there a severity issue? And so, it seems to me that you can't just put aside 12-2P because, as you're saying, a diagnosis doesn't necessarily mean a finding of disability for purposes of benefits. But I would think that you would have to look at those factors to see whether this particular person had a severity of symptoms that would limit them. The ALJ found that fibromyalgia was a severe impairment, Your Honor. So you're saying after that, then those factors or those features of the diagnosis itself no longer need to be addressed by the ALJ? Your Honor, what I am arguing is that 12-2P discusses how it is that the agency will consider fibromyalgia in a case. And first, what is done is looking at the diagnostic criteria to determine whether there is the medically determinable impairment and whether it is severe. That is exactly what the ALJ did. He determined that there was the sufficient number of tender points. One of the doctors found that there were 12 tender points. That satisfies the criteria. There were the various findings based upon the standards for the diagnostic criteria under 12-2P. What the ALJ then did is he proceeded under 12-2P to consider the objective medical evidence. And those objective medical evidence are the findings that the treating physicians were actually including in the report. And as this court stated in Grindley, it's not improper for the ALJ to discuss normal objective findings when that's actually what the treating physicians are reporting. Dr. Kandarian provided these extreme limitations in the opinion that actually she just provided the day before the hearing based upon four examinations that started less than a year before. It did not address the entire period. In fact, Dr. Kandarian stated that the limitations were only beginning immediately. Didn't state that they were going back to August 2015, which was the alleged onset date. It was provided on a checkbox form, which this court stated in Grindley, those checkbox forms that provide little explanation for the limitations don't provide much evidentiary weight. Further, the ALJ couldn't even go to Dr. Kandarian's medical reports to find support for these extreme limitations. Because turning to the medical reports from Dr. Kandarian, they basically document high blood pressure and some minor skin abnormalities that include facial rosacea. These were not the type of skin abnormalities that Ms. Swarto was alleging. She was alleging that whenever she was exposed to light, she had this red beyond rosacea that took weeks to go away. Well, that's just not documented in the record. If she in fact was having these symptoms whenever she went out into the light, then it would be reasonable that somewhere in this record, some doctor would have found those symptoms and actually recorded them. The ALJ also looked at the inconsistency with the other medical evidence. As Grindley found, it's proper to highlight these normal findings. Because if someone is reporting that they have this severe limiting pain for a long period of time, and in fact, I believe that Ms. Swarto was alleging these limitations starting as early as 2010. If you have these long periods of chronic pain, there will be some objective indentia of long-term pain. Here, there's the 5-5 motor strength, intact coordination, there's normal joints, there's a normal steady gait with no assistive devices necessary, which is a direct contradiction to the limitations that Dr. Kandarian was reporting in her report. As she stated that, for example, that Ms. Swarto would require a cane at all times to stand and walk. There's simply no evidence in the record of use of cane. Dr. Kandarian also put extreme limitations of less than two hours total of sitting, less than two hours total of standing and walking, despite the evidence not supporting that degree of limitations. Another example of an extreme limitation that is unsupported in the record, that Ms. Swarto must elevate the legs 90 degrees for greater than 75% of the time when sitting. The evidence in the record simply does not support that degree of limitations. The ALJ went beyond just the objective medical evidence. The ALJ actually considered the activities of daily living. He considered that it appeared that the impairments were manageable with conservative treatment. And in fact, Ms. Swarto did say that one of the fibromyalgia classes was helpful to her. Nevertheless, Ms. Swarto consistently declined recommended treatment, which is inconsistent with a pain level that is so severe that it's disabling. She refused referral to a psychiatrist. She refused referral to a pain psychologist. There was multiple times in the record she was referred to a pain rehabilitation program, and yet she declined that even though the doctor stated that this was the best hope for controlling her pain and restoring functioning. She also declined acupuncture, exercise therapy. So the ALJ considered the entirety of the record, looked at the activities of daily living, the treatment history, the conservative treatment, and the refused treatments in determining that this fibromyalgia case is not disabling. Thank you. This case called Grindley that you're relying on is not cited in your brief. It looks like we have a 28-J letter dated today that cites it. Is that the case you're referring to? Yes, Your Honor. All right. Well, if it's going to be your lead case at oral argument, it would be more helpful to have it cited before the morning of the argument. I know sometimes lawyers stay up all night the night before and find new cases, but if you could do it a week earlier, it would be more helpful to the court because we can't really discuss a case that we haven't read. But we'll look at it now that we have the citation. Thank you for that. Mr. Duncan, we'll hear from you in rebuttal. Thank you. With due respect, the issue is not the existence or nonexistence of fibromyalgia, and the ruling doesn't just limit it to the issue of diagnostics. It also outlines how the ALJ has to go through steps one through five and make an assessment of the residual functional capacity and the impact on the ability to work. Grangley is irrelevant in this point because it was just an issue of whether or not she even had sufficient tender points, let alone the diagnosis, let alone what the impairments were. So it has no bearing. The ultimate issue of this case is that Dr. Kosherian, she's been referred to as having extremely strong limitations or out of context or exaggerated. The same limitations were provided by Dr. Vaughn, Dr. Nanda, all said that she could not work on a full-time sustained work setting. So it's not just him or her ultimately saying this. These are multiple medical opinions, and the ALJ's conclusions are just insufficient considering the voluminous record of problems. Thank you. Very well. Thank you to both counsel for your arguments. The case is submitted and the court will file a decision in due course.